### PEOPLE *v.* WILLIE BROWN

1. WITNESSES — HOSTILE RES GESTAE WITNESS — IMPEACHMENT — PRIOR STATEMENTS — EVIDENCE — ADMISSIBILITY — CRIMINAL LAW.

   Whether a prior statement may be admitted into evidence during a criminal prosecution to impeach a hostile *res gestae* witness depends upon the circumstance of each case.

REFERENCES FOR POINTS IN HEADNOTES
[1–3] 58 Am Jur, Witnesses §§ 675, 767 *et seq.*
[4] 58 Am Jur, Witnesses § 836 *et seq.*

2. WITNESSES—RES GESTAE WITNESS—HOSTILITY—IMPEACHMENT—PRIOR INCONSISTENT STATEMENTS—EVIDENCE—CRIMINAL LAW.

   A hostile *res gestae* witness, called by the prosecution as required by law, who testifies that he is unable to recall certain facts or replies negatively to questions, may be impeached by the prosecution showing that the witness made a prior statement inconsistent with his trial testimony, and where the witness also denies having made the statement, the entire inconsistent statement is admissible for impeachment purposes.

3. WITNESSES — RES GESTAE WITNESS — HOSTILITY — IMPEACHMENT — PRIOR INCONSISTENT STATEMENT — EVIDENCE — ADMISSIBILITY — CRIMINAL LAW.

   A hostile *res gestae* witness who responded to prosecution questions by saying that she couldn't remember or "no" and who, after being given a transcribed copy of her prior statement to refresh her memory, denied that she had ever made it, could be impeached by the prosecution calling to the stand the stenographer who had taken her statement and under such circumstances her entire prior inconsistent statement was admissible where the trial court instructed the jury that the statement was not to be considered as substantive evidence.

4. WITNESSES — RES GESTAE WITNESS — DETENTION — EXAMINATION REGARDING DETENTION.

   Prosecutor could properly question a *res gestae* witness as to why she was being detained where defense counsel had initially raised the issue of her detention thereby giving the prosecutor the right to explore the issue further.

Appeal from Recorder's Court of Detroit, George W. Crockett, Jr., J. Submitted Division 1 March 9, 1970, at Detroit. (Docket No. 6,938.) Decided April 27, 1970. Rehearing denied May 28, 1970. Leave to appeal denied July 29, 1970. 383 Mich 811.

Willie Brown was convicted of first-degree murder. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Dominick R. Carnovale,*

Chief Appellate Lawyer, and *Leonard Meyers,* Assistant Prosecuting Attorney, for the people.

*Carl Levin* and *Arthur J. Tarnow* (Defenders' Office—Legal Aid and Defender Association of Detroit) for defendant on appeal.

Before: T. M. Burns, P. J., and Holbrook and Bronson, JJ.

Bronson, J.  Defendant, Willie Brown, was tried before a jury in the Recorder's Court of Detroit and found guilty of murder in the first degree.  On appeal defendant raises three issues:

1. Whether it was reversible error for the court to admit a prior statement into evidence to impeach a hostile *res gestae* witness where the trial court instructed the jury that such prior statement was not to be considered as substantive evidence.

2. Whether the people may examine a detained *res gestae* witness to determine why he is being detained where the defense on cross-examination has inquired as to whether the witness was being paid and where the witness was then living.

3. Whether the verdict of the jury was against the great weight of the evidence.

I.

Louise Bass was called to the stand by the people and, in response to a number of questions, testified that she "did not remember."  To a number of other questions, the witness answered "no."  When Louise Bass was questioned by the assistant prosecutor, the following took place:

"*Q.* Now I want to show you for the purpose of refreshing your recollection to the conversation, this

document which has previously been marked People's Proposed Exhibit 31. Starting with page 12, read it to yourself. Have you concluded all these pages?

"*A.* I didn't have to. I know I didn't say that.

"*Q.* I ask you if you had read from page 12 to its conclusion, p 24?

"*A.* Do I have to read all of this? I just told him I didn't say any of that."

The people proposed calling a witness for the purpose of impeaching Miss Bass.*

A disagreement arose as to how much of the alleged previous statement should be admitted. The trial court ruled that the entire statement could be read to the jury.

This presents a difficult question. There are valid arguments on both sides. We find that situations such as the present one require individual attention and accordingly limit our decision here to this specific case.

Our Court, in its well reasoned opinion, in *People* v. *Virgil Brown* (1969), 15 Mich App 600, discussed much the same problem as we are faced with today. In that case, Jesse McDaniel, who was originally charged together with the defendant with the crime of armed robbery, testified against the defendant at preliminary examination. McDaniel pleaded guilty and was sentenced prior to defendant's trial. At defendant's trial, McDaniel testified that he could remember nothing but his name and the fact that he got a 20- to 30-year sentence ("I can't recall nothing since I got 20 to 30."). The Court in *People* v. *Virgil Brown, supra,* 602, 603, stated:

---

* "* * * [W]e will bring in Abel Grace of the prosecutor's office and ask him if he remembers taking down, stenographically, the questions put to this witness, Louise Bass, and in the presence of the assistant prosecuting attorney, Arthur Koscinski, and that he took it down and recorded it."

"One of the things McDaniel couldn't remember was his testimony at the preliminary examination, even after he was given the transcript to refresh his recollection. Thereupon, claiming the right to impeach, the prosecution read to McDaniel in the presence of the jury certain of the questions asked him at the examination and his answers. In this way, it was established that McDaniel had testified that he was with defendant on the night in question and that they had robbed the store in question.

"Defense counsel objected to use of the preliminary examination testimony and requested the court to include in its charge to the jury an instruction that 'the questions put to this witness by the prosecution are not evidence and may not be considered by you in your deliberations.' Aside from a remark to the prosecutor not to stray beyond legitimate impeachment, the court did not instruct the jury either during trial or in its charge that use of the preliminary examination testimony was only for impeachment purposes and could not be considered as substantive evidence.

"The court's refusal to so instruct the jury was raised in the motion for new trial. The trial court, in rejecting the contention, held that the prosecutor could impeach its own witness because of the provisions of CL 1948, § 767.40a (Stat Ann 1954 Rev § 28.980[1]):

" 'Witnesses whom the people are obligated by law to call as *res gestae* witnesses may be impeached the same as though such witnesses had been called by the respondent.'

\* \* \*

"For the purpose of impeachment, evidence is generally admissible to show previous contradictory or inconsistent statements. Thus, if a person denies having made a previous contradictory statement, the statement itself may be used for impeachment. 1 Gillespie, Michigan Criminal Law & Procedure (2d ed), § 438. It is not so clear whether a witness who

states at trial that he cannot recall certain facts or cannot recall giving a prior inconsistent statement can be similarly impeached. *Smith* v. *People* (1852), 2 Mich 416, held that the prior inconsistent statement was admissible for impeachment under such circumstances. The case is relied on by the prosecution and cited with approval by Gillespie in § 438, p 540."

Where in a case such as this the prosecutor is obliged to call a *res gestae* witness and that witness proves hostile, we cannot say that the prosecutor should be barred from proving that she made prior contradictory statements, sworn or unsworn, or to show that she actually made the response in the statement when she specifically testified, "I didn't say any of that."

## II.

On cross-examination, defense counsel asked the witness:

"*Q. (Mr. Murphy)*: Where do you live?
"*A.* Well, I don't know; right now I have been living at 1300 Beaubien.
"*Q.* How long have you been living there?
"*A.* Since the 17th of September.

\*   \*   \*

"*Q.* You are a detained witness?
"*A.* Yes, sir.

\*   \*   \*

"*Q.* And are you receiving compensation for that?
"*A.* I don't understand.
"*Q.* Are you receiving money for every day that you are there?
"*A.* I'm supposed to."

In view of the above-quoted testimony, it was not error to permit the people to ask why the witness

was being detained. The people had a right to explore the issue raised by defense counsel.

A careful reading of the record convinces us that the verdict of the jury was not against the great weight of the evidence.

Affirmed.

All concurred.